56 107·
163s 566'

## Moses B. Condell v. Mary J. Glover, Winthrop Sudduth, Trustee, etc., and Emily Montgomery.

1. ADVANCEMENTS—*Object of the Statute.*—The object of the statute of advancements is to make provisions for all children of an ancestor equal. The intention of the act being equality founded upon equity.

2. SAME—*Presumption in Favor of Equality—Hotchpot.*—The law ascribes to a donor of advancements an intention to treat all children alike in the absence of a contrary intent, and if a child is not content, he must bring his advancements into hotchpot, that is, return to the estate what he has before received, before he can receive more.

3. TESTATE ESTATES—*Duty of Executors.*—When the claims of creditors and the costs of the proceedings attending the settlement of a testate estate in the Probate Court have been paid and the time the law requires the estate to be kept open has expired, it is the duty of the executor to settle the estate and dispose of the assets according to the directions of the will.

4. SAME—*When Regarded as Settled.*—After the debts and costs of settling a testate estate have been paid, the legacies should be liquidated and the assets of the estate, if any, devoted to the creation of trust funds lodged in the custody of the trustee, according to the require-

ments of the will. This done, the estate is to be regarded as settled and no longer existing.

5. TESTAMENTARY TRUSTS—*May Continue After the Settlement of the Estate.*—When a trust is created by a will it must necessarily continue, if so provided, after the settlement of the estate, and the trustee must look to the will in such cases for direction and instruction in the management and disposition of the trust fund: but it does not follow that the estate of the testator must remain unsettled until the fund has served the purposes of its creation or been exhausted.

6. EXECUTORS—*May Serve in a Double Capacity.*—Executors may serve in a double capacity, one of executorship pure and simple, the other that of trustee. When the duties of the first capacity are discharged it is to be considered that the estate is settled and closed, though the trusts remain in full force to be administered as in other cases according to the provisions of the will creating them.

7. TRUST FUNDS—*When No Longer a Part of the Estate.*—When the assets of an estate have been, under the provisions of a will, transferred from the custody of the executor to that of the trustee, whether he be the same or another person, such assets constitute a trust fund and are no longer a part of the estate.

8. HOTCHPOT—*Not to Defeat a Trust Fund.*—The rule as to bringing advancements into hotchpot can not defeat the execution of a trust created under the provisions of a will.

9. SAME—*Not to Defeat the Intention of a Testator.*—The maxim that equality is equity and means shares equalized by deducting advancements, and the rule that advancements shall be brought into hotchpot, have no application against the manifest intention of a testator to the contrary.

10. WILLS—*The Law Will Execute.*—Where the validity of a will is unquestioned the law will execute its directions without regard to the reasons that may have influenced the testator.

**Memorandum.**—In equity. In the Circuit Court of Adams County; the Hon. OSCAR P. BONNEY, Judge, presiding. Appeal from a decree construing a will. Heard in this court at the May term, 1894. Reversed and remanded with directions. Opinion filed October 29, 1894.

## STATEMENT OF THE CASE.

On the 23d day of December, 1865, Thomas Condell executed a will, the provisions whereof important for the purposes of this cause are as follows:

" 3. Out of the first proceeds of my estate my executors are to pay to my wife, Elizabeth H. Condell, such an amount as will, with the amount charged to her in the account

attached to this will, make up the sum of five thousand dollars, to be at her absolute disposal.

4.   All the remainder of the proceeds of my estate, including cash on hand, debts due to me, stocks or bonds, to which shall be added all the advances I have heretofore made to each one of my children, or shall hereafter make from time to time, as the same are or hereafter may be charged and set forth in the account attached to this will, which account will be charged in my own handwriting, and the sum of my estate then on hand, composed of all advances made to my children, debts due to me by my children for money loaned them, debts due to me by other persons, stocks, bonds, etc. (except the specific sum devised to my wife), shall then be divided into six equal parts; one part for the use of my wife, and one part for the use of each of my children, Moses B. Condell, Mary Jane Glover, Thomas E. Condell, Emily Montgomery and Albert B. Condell, to be disposed of as hereinafter directed.

5.   The sixth part devised to my wife is to be held in trust by my executors hereinafter named, and invested in stocks or loaned out at interest, with good security, during the lifetime of my wife, and the interest or dividends thereof are to be paid to my wife as they may accrue and are received, for her own use during her natural life, and at her death the same is to be held in trust by my executors as trustees, to be invested in stocks or loaned out at interest with good security, and the interest or dividends is to be divided amongst my children in such sums to each and in such manner as she, my wife, may direct by will, as she may think their circumstances may require; and if my wife should not make a will, then my executors, as trustees, shall hold the same in trust and pay the interest or dividends derived therefrom to my children in such proportions as their circumstances may require to keep them from want or to furnish them the necessaries of life for themselves and children.

6.   The parts devised for the use of each one of my children is to be made up of the amounts charged in the account kept, and to be kept, as aforesaid, against each one of them, and such sum of money, or notes, or stocks, as will make

the one-sixth part as aforesaid, and so much is to be paid at once to Moses B. Condell as will, with the advances charged to him, amount to one-half of his sixth part, as aforesaid, and the other half of the sixth part devised to him is to be held by my executors as trustees, and in trust for him, and is to be loaned out on good security or kept invested in stocks and the interest or dividends is to be paid over to him as the same accrues and is received during his natural life, and after his death the principal of his share or part is to be paid over to his heirs.

7. And so much is to be paid over at once to Mary Jane Glover as will, with the advances charged to her, amount to one-third of her sixth part as aforesaid, and the other two-thirds of her sixth part as devised to her is to be held by my executors as trustees and in trust for her, and is to be loaned out on good security or kept invested in stocks and the interest or dividends is to paid over to her as the same accrues and is received during her natural life, and after her death the principal of her share or part is to be paid over to her heirs.

8. And so much is to be paid at once to Thomas E. Condell as will, with the advances charged to him, amount to one-third of his sixth part as aforesaid, and the other two-thirds of his sixth part devised to him is to be held by my executors as trustees, and in trust for him, and is to be loaned out on good security or kept invested in stocks and the interest or dividends is to be paid over to him as the same accrues and is received during his natural life, and after his death the principal of his share or part is to be paid over to his heirs.

9. And so much is to be paid at once to Emily Montgomery, as will, with the advances charged to her, amount to one-third of her sixth part as aforesaid and the other two-thirds of the sixth part devised to her is to be held by my executors as trustees and in trust for her, and is to be loaned out on good security or kept invested in stocks, and the interest or dividends is to be paid over to her as the same accrues and is to receive during her natural life, and after her death the principal of her part or share is to be paid over to her heirs.

10. The part devised to my son, Albert B. Condell, is to be kept by my executors entire at interest or invested until he shall arrive at legal age, and so much of the interest or dividends as may be necessary to his support and to give him a good education, shall be applied to that purpose by my executors, and when he shall arrive at lawful age, he is to receive one-third of his sixth part and the other two-thirds of the sixth part devised to him is to be held by my executors as trustees and in trust for him and is to be loaned out on good security or kept invested in stocks and the interest or dividends is to be paid to him as the same accrues and is received during his natural life, and after his death the principal of his share or part is to be paid to his heirs.

11. If, by misfortune, affliction or otherwise any of my children should not make a proper use of the income to be derived from their trust fund, my executors and trustees are hereby directed and authorized to use said income, in such a manner as will insure to them the necessaries of life and keep them from want. In the event of the death of any of my children without living heirs of their body their share of my estate shall be added to the sum held in trust for the benefit of my wife, Elizabeth H. Condell, during her natural life, and after her death the same shall be divided amongst my children in the same manner as is provided for the distribution of her share."

Afterward, on the 19th day of August, 1867, said Thomas Condell executed a codicil to his will, the provision whereof material for consideration being as follows: "If, in the settlement of my estate according to the provisions of the foregoing will, it should appear that the amount advanced and loaned my son, Moses B. Condell, should exceed his share of my estate, then his share shall be what he has already received, and his notes shall be canceled and delivered to him." Elizabeth Condell, wife of Thomas, died December 6, 1876, and Thomas survived her about four years, and then departed this life October 11, 1880, leaving this will and codicil his last will and testament. John M.

Glover became sole executor of the estate. It appeared that the testator during his lifetime made advancements to Moses B. Condell, the appellant, in excess of the one-sixth part of the estate bequeathed to him.

Advancements and loans made to Thomas E. Condell also exceeded his one-sixth part. The other devisees, Mary J. Glover, Emily Montgomery and Albert E. Condell, upon the theory that the estate under the will was to be divided equally between them, entered into an agreement in writing, duly acknowledged, purporting to convey the entire estate to Mary J. Glover, and providing for the payment by her to said Emily and Albert B., of certain other sums, to be held by such trustee for said Emily and Albert, under the provisions of the will in respect of each of them. This agreement resulted in the transfer of the assets of the estate to Mary J. Glover, and she paid to the executor the sum of $14,000 for Emily and the like sum for Albert B., to be held by him for them under the provisions of the will. Moses B. Condell and wife executed and delivered to Mary J. Glover the following instrument:

This indenture, signed, sealed and delivered by Moses B. Condell and Helen M. Condell, his wife, of Sangamon County, Illinois, to Mary J. Glover, of LaGrange, Missouri, witnesses: that the said Moses B. Condell and wife, in consideration of $829.35, paid to the Marine and Fire Insurance Company, of Springfield, Illinois, the receipt whereof is hereby acknowledged, do hereby give, grant, quit-claim and release to the said Mary J. Glover, all their claim, right, title and interest in and to the estate of the late Thomas Condell and of the late Elizabeth H. Condell, lands, real estate and personalty wherever situated, to have and to hold to her sole, separate and exclusive use and to her heirs forever.

In testimony whereof we have hereunto set our hands and seals this 14th day of March, 1883.

M. B. CONDELL,    [SEAL.]
H. M. CONDELL.    [SEAL.]

Certificate of acknowledgment to above release.

The executor made his final report as executor, April 6,

1883, which was approved, and he was not formally dis
charged, as he still held, as trustee, under the will, the funds
received from Mary J. Glover for Emily Montgomery and
Albert B. Condell, under the contract between them before
mentioned.  John M. Glover, trustee, died November 11,
1891, and Winthrop Sudduth, one of the defendants in
error, was, by the court, duly appointed successor to Glover
as trustee under said will, and as such he received the funds
held for Albert B. and Emily.   Albert B. Condell died Oc-
tober 30, 1892, leaving no widow, child or descendants of a
child.   On the 13th day of February, 1893, Mary J. Glover,
Emily Montgomery and Winthrop Sudduth, as trustee, filed
a bill in chancery in the Circuit Court of Adams County, in
which they recited the facts heretofore set out and many
others not material to be here considered, and averred and
claimed that Moses B. Condell and Thomas Condell, by vir-
tue of the advancement made to them by their father, and
the releases executed by them to Mary J. Glover, had now
no interest, direct or contingent, of the fund created under
.the provisions of the will in behalf of Albert B., now held by
Sudduth, as successor in trust to the executor named in the
will, and prayed construction of the will to that effect.
The court, upon a hearing, declared and decreed the two
sums of $14,000 held by Sudduth as trustee, respectively
for Emily E. Montgomery and Albert B. Condell, were and
are parts of the testator's estate, and that Moses B. Condell
and Thomas E. Condell having received by way of advance-
ments amounts in excess of the one-sixth share each, of the
testator's estate, had no interest or right whatever in the
fund accruing to Albert B. under the will, but that all in-
terest and right in such trust fund vested in Mary J. Glover
and Emily Montgomery, to whom the court decreed the
trustees should pay and disburse such fund in accordance
with the provisions of the will.   Moses B. Condell prosecuted
this appeal from the decree.

CARTER, GOVERT & PAPE, and PATTON, HAMILTON & PAT-
TON, attorneys for appellant.

CARL E. EPLER, attorney for appellees.

MR. JUSTICE BOGGS DELIVERED THE OPINION OF THE COURT.

Albert died, leaving surviving him neither wife, child, children or descendants thereof; that is, without leaving heirs of his body within the meaning of those words as employed in the will. The parties hereto unite in the view that the fund held for him by Sudduth, as trustee, did not descend as intestate property to the heirs and legal representatives of Albert under the Statute of Descents, but that it fell under the operation of the eleventh clause of the will, which provides that in such an event the fund should be added to a fund provided for Elizabeth H. Condell, wife of the testator, by the fifth clause of will. Elizabeth H., the wife, died before the testator, and no fund in her favor ever existed to which the fund created for the benefit of Albert could be added. We, however, agree with the parties hereto that the will operates to control the disposition of the fund held for Albert.

Then, by the effect and operation of the eleventh clause of the will, it became a trust fund, to be administered in accordance with the provisions of the fifth clause of the will, which are in that respect, as follows: " My executors, as trustees, shall hold the same in trust, and pay the interest or dividends derived therefrom to my children, in such proportions as their circumstances may require to keep them from want or to furnish them the necessaries of life for themselves and children."

The appellant being one of the children of the testator, and there being no proof or allegation that any of the children are in want, or need to be furnished with the necessaries of life, unless reason appear to prevent the operation of this clause, must be regarded as one of the beneficiaries of this fund. Appellee insists that two good and sufficient reasons exist: First, that as the advancements and loans made to appellant by his father exceeded his one-sixth part or share of the estate, he can not have more from this estate without first

bringing into hotchpot what he has received; second, that appellant, by his solemn agreement, divested himself of and invested Mary J. Glover with all his rights in the fund. In support of the first reason or proposition, it is urged that the fund is still part of the estate of Thomas Condell, deceased; that under the will, the loans made to the appellant by the testator are to be considered as advancements; that the statute as to advancements was to make provision for all children equal—the intention of the act being equality, founded upon equity; that the law ascribes to donors of advancements an intention to treat children equally in the absence of a contrary intent, and if a child be advanced and be not content, but would receive more, he must bring into hotchpot what he has before received, to effect equality and equity.

We do not, however, agree that the fund constituted a part of the assets of the estate of the deceased testator. We think that when the claims of creditors and the costs attending the proceedings in the estate in the Probate Court had been met and discharged and the time the law requires the estate to be kept open had expired, that it became the duty of the executor to settle the estate and dispose of the assets according to the directions of the will. Then the amount of the legacies to the children of the deceased should have been ascertained and the net assets of the estate devoted to the creation of a fund for each of them found entitled thereto, and such fund lodged in the custody of a trustee, as the will required. This done, the estate ought to have been regarded as settled or closed, and no longer existing. True, the trusts continue, and the executor or trustee must look to the will for guidance in the administration thereof. It is not uncommon to raise a trust by will and devote funds through the medium of trustees to the furtherance of specified purposes; and though such trustees must look to the will in such cases for direction and instruction in the management and disposition of the trust fund, yet it has never been held or deemed to follow that the estate of the donor must remain unsettled until the fund has served the purposes of its creation

or been exhausted. Executors may serve in a double capacity, one of executorship pure and simple, the other that of trustee, or a testator may devolve the trust duties and powers upon another than the executor. When the duties of the first capacity are discharged, it is to be considered that the estate is settled and closed, though the trusts remain in full force to be administered as in other cases, according to the provisions of the instrument by which they are created, and by the person appointed trustee, whether he be the executor or another. When assets of the estate have been under the provisions of the will transferred from the custody of the executor to that of the trustee, whether he be the same or another person, such assets constitute a trust fund and are no longer part of the estate. Therefore, when the property of this estate was converted into the two trust funds—one for Albert and the other for Emily Montgomery—it ceased to be of the assets of the estate. Hence, upon the death of Albert, the fund held for him did not constitute a part of the estate, but was still a trust fund to be disposed under the provisions of the instrument by which the trust was created, which in this instance is the will. The rule as to bringing advancements into "hotchpot" can have no application to defeat the execution of such a trust.

The maxim that equality is equity and means shares equalized by deducting advancements, and the rule that advancements shall be brought into hotchpot, has, moreover, no application against the manifest intention of the testator to the contrary, and here we think a contrary intention is manifested. When the testator executed his will in 1865, it is clear that he understood that the amount to be charged to Moses B., the appellant, would not amount to one-half the part or share in the estate bequeathed to him, because the testator provided in the sixth clause of his will that Moses B. should be paid so much as would, with the amounts charged to him, amount to one-half of the sixth part of the estate willed to him. Afterward, the testator deemed it necessary to execute a codicil to his will. It contained two clauses, one relating to the share of his estate provided for

Moses B. by the original will, and the other to the share of
Thomas E.   As to Moses B., the codicil directs that if, in the
settlement of the estate, it should appear that the amount
loaned and advanced to Moses B. should exceed his share of
the estate, then his share shall be what he has received, and
his notes  shall be  canceled and given up to him.   Mani-
festly the testator had, during the time intervening between
the execution of the will and the codicil, made advancements
or  loans, or  both, to Moses B., to such an  extent that it
seemed probable to him that the total amount thereof would
exceed a one-sixth part of the estate, and  that he executed
the codicil to make it  clear that he did  not intend  that
Moses B. should be held liable to repay such  loans or ad-
vancements, and to provide all notes given by  Moses B. in
excess of his share should be canceled and delivered up to
him.   It is perfectly clear that the testator intended that
loans or advancements to Moses B. in excess of the amount
his other children would receive, should be deemed absolute
gifts.   It can not be contended that the  testator intended
that his children should at all events share alike in his
estate.   He may have had reasons of which we know noth-
ing for favoring Moses, or he may have been disposed to
favor him capriciously and without reason.   It is not con-
tended that he was incapable of making a will or that he
was unduly  influenced, nor is the validity of the will ques-
tioned; hence the law will execute the directions of the will
without regard to the reasons that influenced the maker.

We hold that the fund in question does not constitute a
part of the estate of Thomas Condell and that Moses B. is
not deprived of his interest and right in it because he did
not bring his advancements and loans into hotchpot.   The
release or conveyance executed by Moses B. Condell and
wife relied upon to effect a transfer of all interest in ques-
tion to Mary J. Glover was executed in 1883.   It purports
only to affect " the right, claim, title and interest of Moses
and wife in the estate, lands, real estate and personalty of
Thomas and  Elizabeth Condell."   It was executed three
years before the death of Albert, and there is nothing upon

the face of the instrument, nor do we find anything other-
wise in the record, tending to show that a transfer of the
contingent interest of Moses in the fund held by the trustee
for the use of Albert, was in the contemplation of the par-
ties.    Before its execution Mary J. Glover, Emily Mont-
gomery and Albert B. Condell were contending that Moses
and Thomas E. had each received from their father by way
of loans and advancements, an amount in excess of his share
of the estate, and consequently, that neither were entitled to
any part of the estate, but the entire assets of the estate
belonged to them.    Acting upon this Mary J. Glover,
Emily Montgomery and Albert entered into a contract by
the terms whereof the entire property of the deceased was
to become the property of Mary J. Glover to be devoted by
her, so far as necessary, to the creation of two funds to be
held in trust, one for Emily and the other for Albert, as re-
quired by the will of Thomas Condell, deceased.    In pursu-
ance of the contract the lands belonging to the deceased
were sold by the executor at the request of Mary J. Glover
and the proceeds delivered to her, and she also invested
with the ownership of the other assets of the estate.    It
had not then been judicially determined, and Moses was
then denying that his advances and loans exceeded his one-
sixth part of the estate.    The conveyance or release was, as
we think, desired by Mary J. Glover and executed by Moses
B. to settle this controversy in order to warrant and obtain
the approval by the court of a final report of the executor
showing disposition by the executor of assets of the estate
in accordance with the agreement between Mary Glover,
Mrs. Montgomery and Albert.    A like release was taken
from Thomas E. Condell for the like purpose, as we think,
and the two releases and the agreement between the other
legatees under the will seem to have been accepted by the
County Court as affecting the transfer of the assets of the
estate to Mary J. Glover, and the final report of the execu-
tor framed upon that basis was approved accordingly.    How-
ever this may be, the release executed by Moses B. and wife
did not purport to, and, in our view, did not affect his con-

tingent interest in the fund which the will required should be raised for the use of Albert. The validity of the transfer of the assets of the estate to Mary J. Glover under the agreement between her and Emily Montgomery and Albert can not be questioned by Moses B., for the reason that he executed a like agreement and, moreover, has acquiesced in the transaction for such length of time that it would be highly inequitable to permit him to object now.

The decree of the Circuit Court must be reversed so far as it decrees that the two trust funds of $14,000 each, provided for by the will of Thomas Condell, deceased, and created thereunder by the operation of the agreement between Mary J. Glover, Emily Montgomery and Albert Condell, and now in the custody of Winthrop Sudduth, as successor in trust to the trustee named by said will, are to be deemed part of the estate of said Thomas Condell, deceased, and also in so far as it declares that Moses B. Condell has no right, title or interest in or to the principal of, or interest accruing upon the said funds of $14,000, or either of them, and in so far as it declares that upon the death of Albert B. Condell said Mary J. Glover and Emily Montgomery took and each became entitled to one-half of the income or interest accruing upon the fund of $14,000 held by said trustee for the use of Albert, and also so far as it directs the trustee to administer the fund upon the theory that said Mary and Emily Montgomery are the only beneficiaries thereof. The cause will be remanded with directions to the chancellor to declare by a decree to be entered in the cause that the fund created by the will in favor of Albert B. Condell and upon which he was entitled to receive the interest accruing during his lifetime, upon the death of said Albert B., constituted a trust fund to be held by a trustee acting under the provisions of the will of Thomas Condell, deceased, and to decree that such fund shall be administered as follows: Such trustee shall invest the fund in stocks or cause it to be loaned out at interest with good security and shall pay the interest or dividends derived therefrom to Mary J. Glover, Emily Montgomery, Moses B. Condell and

Thomas E. Condell in equal parts, unless a greater proportion shall be required to be paid to some one of them to keep them from want or to furnish them with the necessaries of life for themselves or children, in which event said trustee shall apply to a court sitting in chancery for specific directions as to his duties. Reversed and remanded with directions.